IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| MEL M. MARIN, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:11-cv-00132 |
| | ) | Electronic Filing |
| WILLIAM MCCLINCY and | ) | Judge David S. Cercone |
| MELISSA A. THOMPSON | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

I. **Introduction**

Mel M. Marin ("plaintiff") filed a complaint in this Court on July 20, 2011, naming Melissa Thompson ("Ms. Thompson") and William McClincy ("Mr. McClincy") ("defendants") and alleging violations of his rights under the First and Fourteenth Amendments along with several state law claims.[1] (Doc. No. 4). Presently before this Court are the parties' motions for

---

[1] Plaintiff, also known as Melvin M. Marinkovic, is a serial *pro se* filer who has filed vexatious litigation in this court in *Mel Marin v. The Erie Times, et al.*, 1:11cv102 (Doc. No. 18), *aff'd*, 525 F. App'x 74 (3d Cir. 2013); *In re: Joseph Fragile, et al.*, 2:11cv788 (Doc. No. 8); *In re: Joseph Fragile, et al.*, 2:11cv789 (Doc. No. 7), *Mel Marin v. Tom Leslie, et al.*, 2:09cv1453 (Doc. No.s 57 & 58) and *Melvin M. Marinkovic v. Mayor Joseph Sinnott, et al.*, 1:12cv139 (Doc. No. 21).. He also has filed over 70 proceedings in other jurisdictions and been placed on the "Vexatious Litigant List" by the State of California in connection with a filing in the San Diego Superior Court at No. 720715. *See* Transmittal Statement of the Bankruptcy Court to Accompany Notice of Appeal (Doc. No. 1-14) in *In re: Joseph Fragile, et al.*, 2:11cv789 (W.D. Pa. June 15, 2011) at 6 n.3. Plaintiff "was once a law clerk in the federal court and a 9th Circuit extern." Verified First Amended Complaint in *Melvin M. Marinkovic v. Mayor Joseph Sinnott, et al.*, 1:12cv139 (Doc. No. 3) at ¶ 112.

 Plaintiff also uses different addresses in different states to maintain his pending cases. He frequently claims not to have received mail at the address he maintains in the court's docket and seeks to reset his own deadlines for compliance with any particular pretrial deadline. A review of his filings in the related dockets reflects the use of such tactics. *See e.g.* Motion for Service (Doc. No. 13 in 1:12cv139); Motion for an Order to Allow Filing of Opposition to Motion to Dismiss Out-of-Time (Doc. No. 17 in 1:12cv139); Notice of and Motion for Leave to Allow Responses to Order of April 11, 2013 Out-of-Time and Request for Clerk to Send Case Management Order and Declaration in Support (Doc. No. 51 in 2:09cv1453) at 1; Notice of and

summary judgment. (Doc. Nos. 34, 38). For the reasons that follow, defendants' motion [34] will be granted and plaintiff's motion [38] will be denied.

## II. Background

Pennsylvania requires all state agencies to obtain the "Social Security number of an individual who has one on any application for a professional or occupational license or certification." 23 Pa.C.S. § 4304.1(a)(1)-(2). On December 1, 2010 plaintiff submitted his application for Emergency Medical Service ("EMS") certification through reciprocity to the Emergency Medical Management Cooperative West ("EMMCO") in Pennsylvania. (Doc. No. 33 at ¶ 3); (Doc. No. 40 at ¶ 1). Plaintiff did not provide his social security number in the designated space on the Pennsylvania application. (Doc. No. 36, Exhibit C-1). His application was reviewed by EMMCO employee Ms. Thompson who advised plaintiff in a letter dated December 20, 2010 that the application was incomplete because he had not included his Social Security number. (Doc. No. 33 at ¶ 4); (Doc. No. 36, Exhibit C at ¶ 9). Ms. Thompson sent the incomplete application back to plaintiff and asked that he resubmit a completed form. (*Id.*). Plaintiff returned the letter and the incomplete application to Ms. Thompson. (Doc. No. 36 at ¶ 12). Plaintiff alleges that the Third Circuit and the District of Columbia Circuit sealed his military record, which included his social security number, in prior cases due to his classified military service with the United States Special Forces. (Doc. No. 33 at ¶ 6). He allegedly

---

Motion to Supplement Motion for Late Response to Order of April 11, 2013 Out-of-Time and Request for Clerk to Send 2011 Case Management Order (Doc. No. 55 in 2:09cv1453) at 1; Plaintiff's Notice of and Motion for Leave to File a Pre-Trail Statement Out-of-Time (Doc. No. 31 in 2:06cv690) at 1; Plaintiff's Notice of Change of Address and Motion for Remailing (Doc. No. 52 in 1:11-cv-132); Motion for Leave to File Opposition to Summary Judgment Out of Time (Doc. No. 64 in 1:11-cv-132 at 5-6); Motion for Leave to File Third Amended Complaint Out of Time (Doc. No. 65 in 1:11-cv-132 at 1). The docket verifies that in accordance with the Local Rules all orders and opinions are mailed to plaintiff at the mailing address he has provided for the particular case (which includes a change of address upon proper notification to the Clerk).

contacted the Bureau of Emergency Medical Services ("the Bureau of EMS") in Harrisburg, Pa and received permission to submit the record from one of these cases, which contained his social security number, in lieu of a completed application. (*Id.*).

Plaintiff resubmitted the incomplete application along with a copy of an application he has previously submitted in California which included his social security number.[2] (Doc. No. 40 at ¶ 1); (Doc. No. 36, Exhibit C-3). He instructed Ms. Thompson to process the Pennsylvania application by using the information from the California application. (Doc. No. 36 at ¶ 14-15). Plaintiff requested that Mr. McClincy, Executive Director of EMMCO, reassign the processing of Plaintiff's application to another employee. (Doc. No. 33 at ¶ 8); (Doc. No. 36 at ¶ 21). Plaintiff alleges that Mr. McClincy explained that EMMCO could verify the California application and that he would have it done immediately. (Doc. No. 33 at ¶ 9). Defendants were able to verify plaintiff's California license but Ms. Thompson avers she was unable to complete the Pennsylvania application because the Pennsylvania Department of Health ("the Department") requires that applicants complete their own applications. (Doc. No. 36, Exhibit A at ¶ 8-9). Her sworn affidavit provides the following:

> 7. The Pennsylvania Department of Health directs EMMCO West to return incomplete applications to the applicant with instructions as to what information is missing.
> 8. Pursuant to the direction of the Pennsylvania Department of Health, because Plaintiff did not provide his social security number, I was required to return Plaintiff's application to him …
> 12. Pursuant to the direction of the Pennsylvania Department of Health, I am not permitted to complete Plaintiff's application for him.

(Doc. No. 36 at Exhibit C). Mr. McClincy's sworn affidavit similarly provides:

> 7. The Pennsylvania Department of Health directs EMMCO West to return incomplete applications to the applicant with instructions as to what

---

[2] Plaintiff applied for an Emergency Medical Technician ("EMT") license in San Diego, California on November 23, 2010. (Doc. No. 38 at ¶ 5); (Doc. No. 40 at ¶ 1).

3

> information is missing.
> 8. Pursuant to the direction of the Pennsylvania Department of Health, because Plaintiff did not provide his social security number, Ms. Thompson returned Plaintiff's application to him and asked him to resubmit the paperwork once it was completed …
> 19. Plaintiff's complaints or other communications regarding Ms. Thompson's inability to process his application and/or complete his application for him were not considered in making the decision to continue to comply with the Pennsylvania Department of Health's direction to return Plaintiff's incomplete application to him with instructions as to what information is missing.

(Doc. No. 36 at Exhibit B).

In a letter dated April 27, 2011 Ms. Thompson informed plaintiff that she and Mr. McClincy had been instructed that they were not permitted to complete the application for him. (Doc. No. 36, Exhibit G). Ms. Thompson asked plaintiff to complete the application and return it at which time she would "be happy to process it." (*Id.*). Plaintiff did not resubmit a completed application. (Doc. No. 36 at ¶ 25).

## III. **Standard of Review**

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's claim, and upon which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. When the movant does not bear the burden of proof on the claim, the movant's initial burden may be met by demonstrating the lack of record evidence to support the opponent's claim. *National State Bank v. National Reserve Bank*, 979 F.2d 1579, 1582 (3d Cir. 1992).

Once that burden has been met, the non-moving party must set forth specific facts showing that there is a genuine issue for trial, or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Electric Industrial Corp. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) (quoting Fed.R.Civ.P. 56 (a), (e)) (emphasis in *Matsushita*). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

In meeting its burden of proof, the opponent must do more than simply show that there is some metaphysical doubt as to the material facts. *Matsushita*, 475 U.S. at 586. The non-moving party "must present affirmative evidence in order to defeat a properly supported motion" and cannot "simply reassert factually unsupported allegations." *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989). Nor can the opponent "merely rely upon conclusory allegations in [its] pleadings or in memoranda and briefs." *Harter v. GAF Corp.*, 967 F.2d 846 (3d Cir. 1992). Likewise, mere conjecture or speculation by the party resisting summary judgment will not provide a basis upon which to deny the motion. *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382-383 n.12 (3d Cir. 1990). If the non-moving party's evidence merely is colorable or lacks sufficient probative force summary judgment must be granted. *Anderson*, 477 U.S. at 249-250; *see also Big Apple BMW, Inc. v. BMW of North America*, 974 F.2d 1358, 1362 (3d Cir. 1992), *cert. denied*, 507 U.S. 912 (1993) (although the court is not permitted to weigh facts or competing inferences, it is no longer required to turn a blind eye to the weight of the evidence).

IV. <u>Discussion</u>

    a. **<u>First Amendment Retaliation</u>**

Plaintiff alleges that defendants refused to process his application in retaliation for his

complaints to the Bureau of EMS in Harrisburg, Pennsylvania and the filing of the instant suit. (Doc. No. 39 at 6-7). He argues that defendants intended to prevent him from working as an EMT in Pennsylvania and their alleged actions were sufficient to deter a person of ordinary firmness from engaging in protected speech. (*Id.*). For the reasons that follow, plaintiff's First Amendment retaliation claim is without merit.

Section 1983 does not create substantive rights; rather, it provides "remedies for deprivations of rights established elsewhere." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). A prima facie case under § 1983 requires a showing that the plaintiff was: (1) deprived of a federal right (2) by a person acting under color of state law. *Conn v. Gabbert*, 526 U.S. 286, 290 (1999). The First Amendment provides that "Congress shall make no law … abridging the freedom of speech … or the right of the people … to petition the Government for a redress of grievances." U.S. Const. amend I. The due process clause of the Fourteenth Amendment precludes the states from abridging the freedom of speech provided by the First Amendment. *Grosjean v. American Press Co.*, 297 U.S. 233, 243-244 (1936).

In order to state a prima facie case for the violation of First Amendment rights under § 1983, the plaintiff must demonstrate that: (1) he engaged in a constitutionally protected speech; (2) he suffered retaliatory action sufficient to deter a person of ordinary firmness from exercising their constitutional rights; and (3) there was a causal link between the protected speech and the retaliation. *Thomas v. Independence Township*, 463 F.3d 285, 296 (3d Cir. 2006). "[S]uch retaliation offends the Constitution [because] … it threatens to inhibit exercise of the protected right." *Crawford-El v. Briton*, 523 U.S. 574, 612 n. 10 (1998).

Plaintiff cannot satisfy the final prong's causation requirement. In order to establish causation, plaintiff must prove one of the following: "(1) an unusually suggestive temporal

proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with time to establish a causal link." *Arneault v. O'Toole*, 864 F. Supp.2d 361, 385 (3d Cir. 2012). Plaintiff has failed to prove "an unusually suggestive temporal proximity" between his speech or this litigation and EMMCO's refusal to process his incomplete application or complete it on his behalf.

The Pennsylvania code requires the inclusion of plaintiff's social security number on applications for professional licenses. § 4304.1(a)(1)-(2). Further, as sworn by defendants in their affidavits, the Department requires EMMCO to return incomplete applications and prohibits employees from completing them for the applicants. (Doc. No. 36 Exhibits B-C). Plaintiff refused to fill out a required portion of the application. Accordingly, defendants were not able to process his incomplete application. Any temporal proximity between plaintiff's alleged complaints to the Bureau of EMS and defendants' refusal to process an incomplete application is insufficient to establish a causal link. In other words, there is nothing beyond mere speculation to support the proposition that defendants were motivated by something other than their need to comply with the directives of the Bureau.

Similarly, no pattern of antagonism is evident. Ms. Thompson discussed the status of the application with plaintiff by mail and over the telephone. (Doc. No. 36 Exhibit C-2, C-4, F, G). In her letter dated December 20, 2010, Ms. Thompson informed plaintiff that she had attempted to contact him by telephone but was told she had the wrong number. (Doc. No. 36 Exhibit C-2, F). She asked him to verify his contact information and resubmit a completed application. (*Id.*). After a phone conversation with plaintiff, Ms. Thompson explained in a letter dated April 27, 2011 that the Bureau would not permit her to complete the application for him. (Doc. No. 36 Exhibit G). She politely requested that plaintiff resubmit a complete application at which time

she would "be happy to process it." (*Id.*). The mail correspondence between the parties evidences that defendants were forthcoming with plaintiff on the state of his application and what was needed for him to complete it. Given this evidence and the lack of anything beyond conjecture to counter it, the finder of fact cannot attribute defendants' refusal to process an incomplete application with a motive to retaliate against plaintiff in violation of his first amendment rights.[3] Accordingly, defendants are entitled to summary judgment on plaintiff's retaliation claim.

### b. <u>Procedural Due Process Claim</u>

Plaintiff argues that defendants violated his right to procedural due process under the Fourteenth Amendment. (Doc. No. 39 at 17). This argument is unavailing because plaintiff has failed to provide evidence to support a finding that he was deprived of a protected property interest.

The Fourteenth Amendment provides that no state may "deprive any person life, liberty, or property without due process of law." U.S. Const. amend XIV, § 1. The Third Circuit employs a two-prong analysis in determining whether a state actor violated the Constitution's guarantee of procedural due process. *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000). In order to state a prima facie case for deprivation of procedural due process under § 1983 a plaintiff must demonstrate: (1) deprivation of an interest encompassed by the Fourteenth Amendment's protection of "life, liberty, or property;" and (2) insufficient procedural safeguards to ensure "due process of law." *Id.*

---

[3] Of course, plaintiff cannot rely on bald accusations and assertions that are not supported by any evidence at this juncture. *See Harter*, 967 F.2d at 851 (non-moving party has the burden of coming forward with specific facts that create a material issue for trial and cannot meet this burden by relying on "conclusory allegations in his pleadings or in memoranda and briefs"); *Robertson*, 914 F.2d at 382-383 n.12 (same).

The procedural safeguards provided by the Fourteenth Amendment are applicable to the "security of interests that a person has already acquired in specific benefits." *Bd. of Regents of St. Colleges v. Roth*, 408 U.S. 564, 576 (1972). In order for a person to have a property interest in a benefit or he must have more than an abstract need, desire, or unilateral expectation of it. *Id.* at 577. Rather, he must have a "legitimate claim of entitlement to it." *Id.*

Moreover, "[p]rotected interests in property are normally not created by the Constitution. Rather they are created and their dimensions are defined by an independent source such as state statutes or rules entitling the citizen to certain benefits." *Goss v. Lopez*, 419 U.S. 729, 735 (1975) (internal quotations omitted).

There is no Pennsylvania case law or statute that gives plaintiff a protected interest in an EMS license. Nevertheless, "[a] license, once obtained by compliance with law, becomes a valued privilege or right in the nature of property, which may not be suspended or revoked without due process." *Balfour Beatty Const. Inc. v. Dept.of Transp.*, 783 A.2d 901, 908 (Pa. Commw. Ct. 2001). A property right may not be found, however, if the right to practice the occupation has not yet accrued. *See Brady v. Com., St. Bd. of Chiropractic Examiners*, 471 A.2d 572, 575 (Pa. Commw. Ct. 1984).

Here, plaintiff did not complete the application required to receive and EMS license. Consequently, he did not have or obtain a protected property interest.

The Supreme Court has refused to recognize a property interest in a benefit which did not automatically renew and was not guaranteed under state law or administrative policy. *Roth*, 408 U.S. at 578. In *Roth*, an assistant professor was hired by Wisconsin State University for a fixed term of one school year. *Id.* at 566. At the end of that term he was informed that he would not be rehired. *Id.* He brought suit alleging a violation of his rights under the Fourteenth

Amendment. *Id.* at 568. Wisconsin law provided that public university professors could become tenured employees only after four continuous yearly terms of employment. *Id.* New professors were entitled to nothing beyond one year of employment. *Id.* The Court held that the professor did not have a property interest in continued employment sufficient to invoke the safeguards of due process. *Id.* at 578. Because the professor's employment was for a fixed term and there was no state law providing automatic renewal the plaintiff held no more than "an abstract concern in being rehired." *Id.*

Similar to the fixed term employment at issue in *Roth*, EMS licenses are valid for a finite time and do not automatically renew. *See* 35 Pa. C. S. § 8115(c) (requiring Emergency Medical Technicians to re-register for certification every three years); § 8116(c) (Advanced Emergency Medical Technicians must re-register every two years); § 8117(d) (Paramedics must re-register every two years). "Certifications for employment that do not automatically renew are not considered a property interest under Pennsylvania law." *McDonald v. Pa. St. Police*, Civ. A. No. 9-442, 2009 WL 3241858, * 4 (W.D. Pa. Oct. 2, 2009).

In *Lockhart v. Matthew*, 83 F. App'x 498, 499-500 (3d Cir. 2003), an applicant for an EMT license renewal was denied due to indications in his record that he could not meet a lift and carry requirement. *Id.* He was granted three extensions to come forward with evidence of his ability to meet the requirement but failed to provide it. *Id.* at 500. He brought suit alleging violation of due process. *Id.* at 499. The Third Circuit held that the plaintiff did not possess a property interest in an EMT license because it naturally expired and did not automatically renew. *Id.* at 500-501. *See also McDonald v. Pa. St. Police*, Civ. A. No. 9-442, 2009 WL 3241858, * 4 (W.D. Pa. Oct. 2, 2009) (citing *Lockhart* for the rule that "[c]ertifications for employment that do not automatically renew are not considered a property interest under Pennsylvania law"); *Speck*

10

*v. City of Phila.*, Civ. A. No. 6-4976, 2007 WL 2221423, *6 (E.D. Pa. July 31, 2007) (holding that although police officers have a protected interest in continued employment once hired, they do not have a property interest in certification for employment given the fixed term of the license); *Cf. Herz v. Degnan*, 648 F.2d 201, 208 (3d Cir. 1981) (finding a protected interest in a license to practice psychology that automatically renewed upon payment of a fee).

Plaintiff lacked the requisite property interest. Accordingly, defendants' motion for summary judgment on plaintiff's procedural due process claim must be granted.

### c. **Substantive Due Process Claim**

Plaintiff argues that defendants' refusal to process his incomplete application constituted a violation of the substantive portion of the Fourteenth Amendment's due process clause. (Doc. No. 39 at 18). This argument also is unavailing. Plaintiff lacked a property interest entitled to protection under substantive due process.

The due process clause of the Fourteenth Amendment has a substantive element which bars certain actions by the government regardless of the fairness of procedures in place to implement them. *Planned Parenthood of S.E. Pa. v. Casey*, 505 U.S. 833, 846 (1992). All of the fundamental rights encompassed in the term "liberty" are protected by the Constitution from invasion by the States. *Id.* at 847. "Neither the Bill of Rights nor the specific practices of States at the time of the adoption of the Fourteenth Amendment marks the outer limits of the substantive sphere of liberty which the Fourteenth Amendment protects." *Id.* at 848. A deprivation by state officials which does not offend procedural due process may still give rise to a substantive due process claim "upon allegations that the government deliberately and arbitrarily abused its powers." *Nicholas v. Pa. St. U.*, 227 F.3d 133, 139 (3d Cir. 2000) (internal citation omitted). A property interest which falls under the protection of substantive due process may not be taken by the state for arbitrary, irrational, or improper reasons. *Id.*

A non-legislative substantive due process claim requires the plaintiff to establish a property interest protected under the due process clause of the Fourteenth Amendment and a deprivation of that interest by the government which shocks the conscience. *Id.* at 139-140. Not all property interests which fall under the protection of the procedural element of the due process clause are protected under the substantive portion. *Reich v. Beharry*, 883 F.2d 239, 243-245 (3d Cir. 1989). In order to state a substantive due process claim the deprived property interest must be of a "particular quality." *Nicholas*, 227 F.3d at 140. "[T]he case law of this circuit and the Supreme Court provides very little guidance as to what constitutes this certain quality of property interest." *Nicholas*, 227 F.3d at 140. (internal citation omitted). Whether an interest is protected under the substantive element is not determined by reference to state law. *Id.*

The threshold question is whether the interest is fundamental under the United States Constitution. *Id.* (citing *Regents of U. of Mich. v. Ewing*, 474 U.S. 214, 229 (1985)). If the answer to that inquiry is yes then the plaintiff is protected by substantive due process from arbitrary or irrational deprivation. *Nicholas*, 227 F.3d at 142. If the interest is not fundamental under the Constitution then the government action does not violate the substantive element and will be valid if it satisfies procedural due process standards. *Id.*

Ownership of real property is an interest sufficient to warrant protection under the substantive component of due process. *DeBlasio v. Zoning Bd. of Adjustment for Twp. of W. Amwell*, 53 F.3d 592, 600-601 (3d Cir. 1995), *overruled on other grounds by United Artists Theater Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392 (3d Cir. 2003). The Third Circuit has declined to extent the protection to other rights created under state law such as public employment. *Simic v. Pitts. Water and Sewer Auth.*, Civ. A. No. 13-802, 2013 WL 6058463, *9 (W.D. Pa. Nov. 18, 2013) (citing *D'Atilio v. Dover Twp.*, Civ. A. No. 6-1931, 2007 WL 2845073

(M.D. Pa. Sept. 26, 2007). The Supreme Court has cautioned that the doctrine of judicial self-restraint requires the exercise of utmost care when asked to "break new ground in this field." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992).

Plaintiff lacks the requisite fundamental property interest to sustain his substantive due process claim. In this jurisdiction non-legislative substantive due process review is limited to cases involving a quality of interest analogous to real property ownership. *Simpson v. Henry*, Civ. A. No. 11-278, 2011 WL 6000608, * 5 (W.D. Pa. Nov. 30, 2011) (citing *Nicholas*, 227 F.3d at 141). His interest in the license at issue is not comparable to the rights which have been found fundamental under the Constitution. Because plaintiff has failed to produce facts that establish the requisite fundamental property interest, his substantive due process claim must fail.

### d. **Conversion and Invasion of Privacy**

Plaintiff argues that defendants committed the tort of conversion by filing copies of his EMT applications as exhibits in connection with this lawsuit. (Doc. No. 39 at 9-10). Plaintiff also argues that filing these applications constituted a tortious invasion of privacy and intrusion of seclusion. (Doc. No. 39 at 13). These arguments fail because the filing of these documents as exhibits was privileged under Pennsylvania law.

Defendants' use of the EMT applications was privileged because the forms are material to the case at bar. "All charges, all allegations and averments contained in regular pleadings addressed to and filed in a court of competent jurisdiction, which are pertinent and material to the redress of relief sought, whether legally sufficient to obtain it or not, are absolutely privileged." *Kemper v. Fort*, 219 Pa. 85, 93 (Pa 1907). The Pennsylvania application is the nucleus of plaintiff's claims. Its inclusion in defendants' exhibits was necessary to the presentation of their legal defenses. Namely, that plaintiff refused to provide his social security number despite being required to provide it under state law. The California application also is

13

factually pertinent. Plaintiff initially sought a license in Pennsylvania through reciprocity with California. Defendants were able to verify the California license but remained unable to complete plaintiff's application for him. Plaintiff sued defendants over the manner in which they handled plaintiff's application. Both applications were pertinent to the charges, allegations and averments at issue in this case. Accordingly, defendants' filing of these applications was privileged and plaintiff's claims for conversion and invasion of privacy are without evidentiary support.

Plaintiff's claim for invasion of privacy also fails because the applications properly were redacted in accordance with the Federal Rules of Civil Procedure and this Court's own rules. Rule 5.2 of the Federal Rules of Civil Procedure provides the following:

> in an electronic or paper filing with the court that contains an individual's social-security number, taxpayer-identification number, or birth date, the name of an individual known to be a minor, or financial account number, a party or nonparty making the filing may include only:
>
> > (1) the last four digits of the social security number and taxpayer-identification number;
> > (2) the year of the individual's birth;
> > (3) the minor's initials; and
> > (4) the last four digits of the financial-account number.

Fed. R. Civ. P. 5.2 (a). Defendants appropriately redacted the above information from the applications before filing them as exhibits. This Court's own Local Rule 5.2(D)(5) provides in addition that home addresses must be redacted to include only the name of the city and state. LCvR 5.2(D)(5). Plaintiff included post office box addresses on the applications rather than a home address. Accordingly, defendants complied with Local Rule 5.2 and plaintiff's claims for conversion and invasion of privacy cannot proceed further.

### e. Interference with Prospective Contractual Relationship

Finally, plaintiff argues that defendants tortiously interfered with his prospective careers

as an EMT and politician. (Doc. No. 39 at 15). Plaintiff asserts that he intended to use the salary he would have earned as an EMT in 2011 to pay for his congressional election campaign.[4] (Doc. No. 33 at ¶ 19-20). As a result of defendant's alleged interference, plaintiff claims he was unable to earn a salary of $165,000 per year as a member of Congress. (*Id.* at ¶ 20). Plaintiff's claim for tortious interference must fail for the reasons that follow.

The following elements are necessary to prevail in a claim for intentional interference with prospective contractual relation: "(1) a prospective contractual relation: (2) the purpose or intent to harm the plaintiff by preventing the relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual damage resulting from the defendant's conduct." *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 471 (Pa. 1979). A certainty of the prospective contract is not required but there must be a "reasonable likelihood or probability." *Glenn v. Point Park College*, 272 A.2d 895, 898-99 (Pa. 1971). This requires a showing of something greater that a "mere hope." *Id.* at 899. An objective standard must be applied when determining whether a "reasonable likelihood or probability" existed. *Phillips v. Selig*, 959 A.2d 420, 428 (3d Cir. 2008).

Plaintiff has failed to establish the threshold element of a prospective contractual relation. Assuming that upon completion of his Pennsylvania application plaintiff would have qualified for a license via reciprocity with California, it does not follow that he possessed more than a mere hope of finding employment as an EMS. Plaintiff has provided no evidence of an employer that was prepared to hire him upon receipt of his Pennsylvania license.

---

[4] The court notes that during the time plaintiff owned the house in Erie he ran for office in that congressional district and filed a lawsuit when the local newspaper commented on his candidacy. *See generally Mel Marin v. The Erie Times, et al.*, 1:11cv102 (Doc. No. 18), *aff'd*, 525 F. App'x 74 (3d Cir. 2013). Of course, plaintiff claimed to be a Pennsylvania resident in order to pursue his candidacy and that lawsuit. See *supra*, n. 1.

Moreover, "Pennsylvania courts have consistently required more evidence than the existence of a current business or contractual relationship." *Phillips*, 959 A.2d at 429. In *Thompson Coal Co.,* the court refused to find a reasonable probability that a year-to-year lease which had been consistently renewed for ten years would renew after the set termination date. *Id.* (citing *Thompson Coal Co.*, 412 A.2d at 471). In *Strickland v. U. of Scranton*, 700 A.2d 979, 982 (Pa. Super. 1997), the court did not find a reasonable probability that a tenured university administrator's contract would be renewed or that he would have been offered a contract with another school absent the alleged interference. *Id*. at 985-986.

Plaintiff asks this Court to recognize an expectancy which is even more remote that those alleged in *Thompson Coal Co* and *Strickland*. Pennsylvania courts would decline to hold that a prospective contractual relationship arises merely upon receipt of a professional license. Plaintiff's claim for interference with his future career in politics falls short of the mark for the same reasons. He cannot establish more than a mere expectancy or hope that he would have achieved elected office. Since he has failed to proffer evidence to support the threshold element of the tort, defendants are entitled to summary judgment on plaintiff's claim for interference with prospective contractual relationship.

Furthermore, even if plaintiff had a reasonable expectancy of employment after receiving his license, there is insufficient evidence to support the element of intent. "Where the relationship allegedly interfered with is prospective rather than existing, specific intent on the part of the defendant to cause harm to the plaintiff must be alleged to make out a cause of action." *Geary v. U.S. Steel Corp*, 319 A.2d 174, 179 (Pa. 1974). The instant case does not present any evidence that would support a finding that defendants refused to process plaintiff's incomplete application with the specific intent of harming his prospective career or earnings.

16

Section 4304.1(a)(1)-(2) of the Pennsylvania Code requires the inclusion of social security numbers on professional license applications. Further, as defendants' sworn affidavits provide, department policy prohibited EMMCO employees from completing plaintiff's application. (Doc. No. 36 at Exhibit B-C). Defendants' compliance with these provisions cannot be viewed as purposeful retaliation intended to deprive plaintiff of prospective contractual advantage.

### f. Civil Conspiracy

Plaintiff's claim that defendants conspired to prevent him from receiving a license is also unavailing. (Doc. No. 39 at 13). In order to state a cause of action for civil conspiracy it must be demonstrated that "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose, (2) an overt act done in pursuance of the common purpose, and (3) actual legal damage." *Phillips*, 959 A.2d at 437. Absent proof of an underlying cause of action "there can be no cause of action for civil conspiracy to commit that act." *Id.* (citing *McKeeman v. Corestates Bank,* 751 A.2d 655, 660 (Pa. Super. 2000). Having failed to establish his aforementioned claims, no cause of action exists upon which plaintiff may anchor his conspiracy claim. Accordingly, plaintiff's claim for civil conspiracy collapses under its own weight.

### g. Qualified Immunity

Defendants argue that they are shielded from any liability by the doctrine of qualified immunity. (Doc. No. 35 at 12). Having concluded that defendants did not violate plaintiff's constitutional rights our inquiry could end here. In light of the Supreme Court's instruction that the issue of qualified immunity must be decided at the earliest possible stage of litigation, however, the Court will determine whether defendants are entitled to qualified immunity. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). *See Egolf v. Witmer*, 526 F.3d 104, 111-112 (3d Cir. 2008) (declining to analyze the Constitutional claims and granting qualified immunity under

the "clearly established" prong); *Robinson v. Arrugueta*, 415 F.3d 1252, 1256 (11th Cir. 2005) (proceeding to the second prong after determining that there was not a constitutional violation).

Government officials performing discretionary functions may be shielded from liability "insofar as their conduct does not violate clearly established statutory or constructional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine balances two interests, "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223 (2009). In *Saucier v. Katz*, 533 U.S. 194, 201 (2001) *modified, Pearson,* 555 U.S. at 223, the Supreme Court outlined a two-part test for determining whether a defendant is shielded by qualified immunity. *Id.* at 201. The initial inquiry is whether "[t]aken in the light most favorable to the party asserting the injury … the facts alleged show the officer's conduct violated a constitutional right." *Id.* If a constitutional right could not have been violated even if the allegations were established, then the analysis comes to an end. *Id.* If, however, a violation could have occurred given a favorable reading of the parties' submissions, then the inquiry turns to "whether the right was clearly established." *Id.* This portion of the analysis must be "undertaken in light of the specific context of the case, not as a broad general proposition." *Id.*[5]

Assuming for the sake of argument that plaintiff's Constitutional rights were violated, defendants are nevertheless entitled to qualified immunity because the rights were not clearly established. The Third Circuit has defined "clearly established" as meaning "some but not precise correspondence between relevant precedents and the conduct at issue." *McLaughlin v.*

---

[5] In *Pearson*, the Court reconsidered the sequence of the *Saucier* test. 555 U.S. at 236. The Court discarded any sequential requirement, holding that "judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the prongs of the qualified immunity analysis should be addressed first." *Id.*

18

*Watson*, 271 F.3d 566, 571 (3d Cir. 2001) (internal citations omitted). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202.

Summary judgment based upon qualified immunity is proper if the law did not provide the officer with notice that the conduct at issue clearly was unlawful. *Id.* The "clearly established" prong requires a review of the "existing law at the time of the alleged violation and [the] circumstances confronting the officer to determine whether a reasonable state actor could have believed his conduct was lawful." *Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d Cir. 2010) (citing *Anderson v. Creighton*, 483 U.S. 635, 641 (1987); *Berg v. County of Allegheny*, 219 F.3d 261, 272 (3d Cir. 2000); *Paff v. Kaltenbach*, 204 F.3d 425, 431 (3d Cir. 2000)). Qualified immunity provides "ample room … for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (internal citations omitted).

This Court's review of the relevant law has not revealed any authority which would support the proposition that defendants violated a clearly established right by refusing to process plaintiff's incomplete application. Rather, § 4304.1(a)(1)-(2) of the Pennsylvania code required the inclusion of plaintiff's social security number on the application. Defendants were complying with that law by refusing to process the incomplete application. It follows that existing law could not possibly have provided notice that plaintiff's rights would be violated as a result. *See Wilson v. Layne*, 526 U.S. 603, 615 (1999) ("[A]s we explained in *Anderson*, the right allegedly violated must be defined at the appropriate level of specificity before a court can determine [that] it was clearly established"). A reasonable state official would certainly have

19

believed that refusing to process the application was lawful. In other words, defendants' actions cannot be classified as "plainly incompetent" or a knowing violation of the law. *Hunter*, 502 U.S. at 229. Accordingly, summary judgment based on the application of qualified immunity is appropriate.

V.  **Conclusion**

For the foregoing reasons, defendants' motion for summary judgment will be granted and plaintiff's motion will be denied. An appropriate order will follow.

Date: April 10, 2014

s/David Stewart Cercone  
David Stewart Cercone  
United States District Judge

cc:   Mel M. Marin  
     General Delivery  
     1001 Frederick Road  
     Catonsville, MD 21228

     (*Via First Class Mail*)

     Thomas P. McGinnis, Esquire  
     Jeffrey D. Truitt, Esquire  
     Karin Romano Galbraith, Esquire

     (*Via CM/ECF Electronic Mail*)